EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Asociación Residentes Pórticos de Guaynabo<br><br>    Recurridos<br><br>        v.<br><br> Compad, S.E.;<br> F&S Construction, S.E.<br><br>    Peticionario | Certiorari<br><br>2004 TSPR 203<br><br>163 DPR \_\_\_\_ |

Número del Caso: CC-2002-871

Fecha: 16 de diciembre de 2004

Tribunal de Circuito de Apelaciones:

                Circuito Regional II

Juez Ponente:

                Hon. Néstor S. Aponte Hernández

Abogado de la Parte Peticionaria:

                Lcdo. Juan E. Náter Santana


Abogada de la Parte Recurrida:

                Lcda. Ana Belén Frías



Materia: Defectos de Construcción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación Residentes
Pórticos de Guaynabo

    Recurridos

         v.                     CC-2002-0871     Certiorari

Compad, S.E.;
F&S Construction, S.E.

    Peticionarios

Opinión del Tribunal emitida por el Juez Asociado SEÑOR CORRADA DEL RÍO

San Juan, Puerto Rico, a 16 de diciembre de 2004.

Nos corresponde determinar si una junta de titulares de un complejo residencial sometido al régimen de propiedad horizontal tiene capacidad jurídica para comparecer a vindicar sus derechos ante el Departamento de Asuntos del Consumidor (en adelante "DACO"). Nos corresponde, además, resolver cuándo comienza a decursar el término para presentar ante DACO una querella por vicios de construcción.

## I. Trasfondo Fáctico

En 1995, Compad, S.E. y F&S Construction, S.E. (en adelante colectivamente "Compad"), tuvieron a su cargo el desarrollo y

construcción del proyecto conocido como Pórticos de Guaynabo, en el Barrio Santa Rosa III de Guaynabo.

En enero de 1997, Compad completó la primera fase del proyecto y entregó cuatro (4) de un total de diecisiete (17) edificios proyectados, los cuales, como un todo, eventualmente formarían parte de un complejo de doscientas cuatro (204) unidades residenciales.

La mayoría de las escrituras de compraventa referentes a la primera fase del proyecto se otorgaron entre enero y abril de 1997, periodo durante el cual Compad ostentaba la administración interina del complejo.

Durante el referido interinato, varios titulares le presentaron a Compad reclamaciones que emanaron de carestías y desperfectos relativos a la pintura de rejas y edificios, extintores, servicios de mantenimiento y seguridad, pisos de los pasillos, estacionamientos y áreas comunes en general.

En agosto de 1998, se constituyó un Comité de Transición a los fines de escrutar los libros manejados por Compad y pautar los procedimientos necesarios para que los titulares asumieran la administración del complejo residencial. A pesar de que el Comité se lo solicitó expresamente, Compad se negó a entregar la totalidad de los libros y documentos referentes a la administración interina del complejo.

En aras de que se corrigieran los defectos de construcción antes mencionados, el Comité celebró varias

reuniones con Compad, tras las cuales, ésta se comprometió a atender los reclamos de los titulares.

Así las cosas, los titulares de Pórticos de Guaynabo convocaron una asamblea con el propósito de elegir una Junta de Directores que velara por sus intereses y canalizara las reclamaciones de los titulares. La Junta de Directores (en adelante "la Junta") fue elegida el 25 de agosto de 1998.

Aun cuando la Junta requirió nuevamente a Compad que le entregara los documentos necesarios para poder asumir sus funciones formalmente, y a pesar de que así lo exige expresamente el Artículo 36a de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293-1, Compad insistió en su negativa de hacer entrega del archivo. Por tal razón, a pesar de haber sido electa en noviembre de 1998, no fue hasta seis meses y medio después que la Junta pudo ejercer sus funciones en propiedad y asumir el control de la administración del complejo.

Una vez Compad cumplió con las condiciones necesarias para que la Junta pudiera asumir la administración en propiedad, se le requirió nuevamente a Compad que corrigiera las imperfecciones y carencias que afectaban varias de las estructuras del complejo. A pesar de que Compad se había comprometido a ello, no atendió la reclamación arguyendo que había caducado.

El 2 de septiembre de 1999, la Asociación de Residentes de Pórticos de Guaynabo, por conducto de su

Junta de Directores y en representación del Consejo de Titulares, presentó ante DACO una querella por vicios de construcción contra Compad. Los titulares solicitaron que DACO ordenara a las partes querelladas a: (1) subsanar las faltas y defectos del proyecto y, (2) compensar a los titulares por los daños y perjuicios que sufrieron como consecuencia de los actos de Compad.

El 31 de agosto de 2000, luego de la celebración de varias vistas, de una inspección ocular del complejo residencial y de haber emitido un informe en el cual hizo constar las pésimas condiciones en las que se encontraban las áreas comunales del edificio, DACO declaró *ha lugar* la querella. Resolvió que los querellados eran solidariamente responsables por las obras sin terminar y por las que adolecían de vicios de construcción, a saber: puertas de contador de electricidad sin terminar; áreas comunales que padecían de excesiva humedad, filtraciones, grietas, pisos y paredes manchadas; pasamanos descascarados; deficiencias en la verja del patio del penthouse en las áreas comunales; pared engalletada en las áreas comunes del apartamento; manchas de humedad en el techo de las áreas comunes; filtraciones en el techo de las áreas comunes; filtraciones por los bloques tragaluces de los pasillos de las áreas comunes; y, marcado deterioro, incluyendo manchas, del cual adolecía

casi toda la pintura del complejo residencial.[1] Ordenó que se corrigieran todos los defectos señalados.

Inconforme con dicha resolución, Compad presentó ante DACO una moción de reconsideración en la cual alegó que dicha agencia carecía de jurisdicción para atender la querella. Adujo, en apoyo de su contención que: (1) el Consejo de Titulares no cumple con la definición de "consumidor" del correspondiente reglamento de DACO[2] y, (2) había expirado el término para instar ante DACO una reclamación por vicios de construcción.

Luego de varios incidentes procesales y tras haber transcurrido el término de noventa (90) días que tenía DACO para emitir su determinación, Compad presentó ante el Tribunal de Apelaciones un recurso de revisión administrativa. Dicho tribunal confirmó la resolución emitida por DACO.

Inconforme, Compad recurre ante nos y esboza los siguientes señalamientos de error:

> Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la jurisdicción del Departamento de Asunto[s] del Consumidor sobre la querella presentada por el Consejo de Titulares.
>
> Erró el Honorable Tribunal de Circuito de Apelaciones al interpretar erróneamente algunos de los hechos ante su consideración y sostener todas las determinaciones de

---

[1] Véase Informe Técnico de DACO, 12 de noviembre de 1999, Apéndice del Certiorari, pág. 51.

[2] Reglamento Sobre Condominios promulgado por DACO el 27 de febrero de 1978.

hechos formuladas en la resolución del DACO, aun cuando algunas son contrarias a la evidencia documental y testifical presentada ante dicha agencia.

Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la determinación del Departamento de Asunto[s] del Consumidor de que la acción no había caducado.

Erró el Honorable Tribunal de Circuito de Apelaciones al sostener la determinación del Departamento de Asunto[s] del Consumidor de que la parte querellada venía obligada a reparar los techos de todos los edificios y pintar todos los defectos reclamados, contrario a lo establecido por la prueba ante su consideración y lo dispuesto en la legislación y reglamentación vigente, según interpretada por este Honorable Tribunal [Apelativo].

Mediante Resolución de 25 de junio de 2003, expedimos el auto de certiorari. Con el beneficio de la comparecencia de las partes, estamos en posición de resolver.

## II. Capacidad de un grupo de consumidores para presentar una querella ante DACO

Compad aduce que DACO carece de jurisdicción para atender la querella presentada por la Asociación de Residentes de Pórticos de Guaynabo por el fundamento de que dicha agencia puede considerar únicamente querellas presentadas por un "consumidor", según definido en la ley y reglamentos aplicables. No le asiste la razón.

La controversia medular se reduce, pues, a determinar: ¿quién puede presentar una querella ante DACO?

En aras de responder a dicha interrogante, es ineludible tomar en cuenta la visión comunitaria del régimen de propiedad horizontal, la cual reconoce la necesidad y la importancia de crear instituciones o mecanismos para proteger los intereses comunes de los propietarios de las unidades individuales que conforman el régimen. Precisamente por ello, el artículo 38 de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec 1293b, creó el Consejo de Titulares como órgano directivo y deliberativo de todo condominio. Cónsono a dicha función, nuestro ordenamiento inviste al Consejo de Titulares de la prerrogativa de tomar decisiones sobre todos los asuntos de interés para la comunidad y adoptar aquellas medidas necesarias para la mejor consecución de los objetivos comunes de los condóminos.

Conforme a los principios que inspiraron la creación del Consejo de Titulares, en Arce v. Caribbean Home Const. Corp., 108 D.P.R. 225 (1978), resolvimos que el Consejo de Titulares es un sujeto de derecho que actúa con personalidad propia en el ámbito de sus finalidades y que tiene existencia jurídica independiente de la de sus miembros. Representa, sin embargo, los intereses de un grupo de consumidores y como consejo es, en efecto, un grupo de consumidores.

Nos ilustra sobre esta materia el comentario de Pérez Pascual, quien discute y comenta los enfoques de

Albadalejo y Beltrán de Heredia, para posteriormente

exponer su visión particular:

> ALBADALEJO (125) define la persona jurídica como 'organización humana encaminada a la consecución de [un] fin, a la que el Derecho reconoce como miembro de la comunidad, otorgándole capacidad jurídica'.
>
> 'El Derecho no crea seres de la nada, sino que atribuye personalidad (además de al hombre) a ciertos entes que aprehende del campo social, entes que sin tener una realidad corporal y espiritual como aquél, sin embargo, tienen realidad social, una individualidad propia, y toman parte en la vida de la comunidad como unidades distintas e independientes (así, un municipio, un club deportivo, una sociedad anónima), de los singulares elementos que, en cada momento concreto, los componen (**los vecinos**, los socios, los accionistas), **para alcanzar determinados fines que interesan, no a un solo hombre, sino a una pluralidad de ellos, o que prácticamente sólo son conseguibles, o al menos, los son más fácilmente**, por organizaciones humanas, que por el hombre aislado.' ...
>
> Sin embargo, [Beltrán de Heredia], estudiando el Derecho positivo español, reconoce la existencia de alguna concesión de carácter social, y por tanto de organización colectiva, trascendente del simple individualismo cuando nos explica que del juego de los principios informadores de la comunidad, en el Derecho español, puede deducirse que los intereses actuantes en la misma son individuales, es decir, simplemente unidos a la copropiedad. ...
>
> **Pero la existencia de una organización colectiva** (comenta el propio Pérez Pascual), objetivizada y realizada, **la Junta de Propietarios, dotada de personalidad jurídica, no supone la desaparición de la existencia de los propietarios considerados individualmente**.[3]
> (énfasis suplido)

---

[3] Pérez Pascual, E. (Doctor en Derecho), <u>El Derecho de Propiedad Horizontal: Un ensayo sobre su estructura y naturaleza jurídica</u>. Madrid, Marcial Pons – Libros Jurídicos, 1974, págs. 147, 156 y 205, citando Albadalejo, <u>Instituciones de Derecho Civil</u>, Publicación

continúa...

A base de los fundamentos antes discutidos, resulta forzoso concluir que en el caso de marras, el grupo de consumidores que, por medio del Consejo de Titulares, compareció ante DACO, tenía capacidad para así hacerlo. Ahora bien, vale añadir que esto último se dramatiza en el contexto de lo dispuesto en el Artículo 9 de la Ley Orgánica de DACO, 3 L.P.R.A. sec. 341 (h), el cual dispone:

> El Secretario establecerá una división administrativa en el Departamento con el propósito de recibir, ventilar y adjudicar las querellas que por violación a las leyes, o disposiciones de las mismas, que den protección al consumidor, radiquen consumidores individuales, **grupos de consumidores** y funcionarios del Departamento u otros funcionarios del Estado Libre Asociado de Puerto Rico. (Énfasis suplido)

Se desprende diáfanamente del lenguaje literal y expreso de la Ley que el consumidor tiene la opción de vindicar sus derechos individualmente o como grupo. En otras palabras, la Ley permite que un colectivo de consumidores vindique sus derechos ante dicha agencia administrativa.

El espíritu que informó la creación de DACO y la aprobación de su ley orgánica fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y

---

... 3 continuación

del Real Colegio de España en Bolonia, Librería Bosch, Barcelona 1960, págs., 198-199, 207-208; véase, del mismo autor, La persona jurídica, Librería Bosch, Barcelona, 1961.

que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios.[4]

Impedir que los consumidores se agrupen para comparecer a DACO a reclamar sus derechos atentaría contra el historial legislativo de la referida ley. En este caso concreto, esto implicaría que los miembros de la Asociación de Residentes de Pórticos de Guaynabo tuvieran que presentar querellas individualmente. Para que ningún titular se viera desprovisto del remedio administrativo aplicable, tendrían que presentarse al menos doscientas cuatro (204) querellas ante DACO. Esto indudablemente no sólo menoscabaría la política pública que persigue proteger vigorosamente los derechos de los consumidores, sino que además, lesionaría los tan preciados intereses de economía procesal y el manejo eficiente de recursos públicos.

De manera que, ante el lenguaje literal de la Ley Orgánica de DACO, en atención a la Ley de Propiedad Horizontal y su jurisprudencia interpretativa, así como del espíritu y los fines que inspiraron su aprobación, resolvemos que el Consejo de Titulares tiene capacidad para comparecer ante DACO. De ahí que en el caso de marras, la Asociación de Residentes de Pórticos de Guaynabo, por conducto de su Junta de Directores y en

---

[4] Véase Exposición de Motivos de la Ley Orgánica de DACO, Ley Núm. 5 de 23 de abril de 1973, Leyes de Puerto Rico, págs. 16-18. Véase, además, Alcance del Proyecto sometido por los Senadores que presidían las Comisiones de Asuntos Socioeconómicos, Gobierno, Hacienda y Jurídico-Penal.

representación del Consejo de Titulares, podía comparecer a DACO a presentar la querella objeto de este recurso.

### III. Cómputo de los términos para reclamar por defectos o vicios de construcción

Resuelto lo anterior, debemos determinar cuándo comienza a decursar el término para presentar ante DACO una querella por vicios de construcción. La respuesta a lo anterior se halla en el análisis en conjunto de varias disposiciones legales.  Veamos.

El Artículo 9 de la Ley de la Oficina del Oficial de Construcción, la cual reglamenta las actividades de urbanizadores y constructores que se dediquen al negocio de la construcción de viviendas, dispone que incurrirá en una práctica indeseable en el negocio de la construcción de vivienda todo urbanizador o constructor que deje de corregir un defecto de construcción en una vivienda. 17 L.P.R.A. sec. 509. En particular, acerca de la controversia medular ante nuestra consideración, dicha ley dispone que la acción para exigir responsabilidad por vicios o defectos de construcción debe presentarse dentro de los dos (2) años del otorgamiento de la escritura de compraventa. Artículo 11, 17 L.P.R.A. sec. 511.

Similares principios se recogen en el Reglamento de DACO Núm. 2268 del 16 de septiembre de 1977, conocido como Reglamento para Regular las Distintas Actividades que se llevan a cabo en el Negocio de la Construcción (en adelante "Reglamento de la Construcción"). Allí se expresa que a los defectos de construcción para los

cuales no se especifique un término dentro del cual deberá notificarse al urbanizador o constructor, le aplicará un término de notificación de dos (2) años. Sección 10 del Reglamento de Construcción. Cuando se trate de mano de obra deficiente o de determinados defectos enumerados en el Reglamento de la Construcción, éste dispone que habrá que notificar al urbanizador o constructor dentro de los seis (6) meses de la fecha de la firma de la escritura original de compraventa. Sección 10 del Reglamento de Construcción de DACO. Id.

De lo anterior se colige que el término prescriptivo para hacer un reclamo por vicios de construcción varía dependiendo de la naturaleza del vicio o deficiencia. Ahora bien, independientemente de cuál sea el término aplicable en cada caso, la interrogante medular es: ¿a partir de qué momento se comienzan a computar estos términos cuando el reclamo se hace por defectos en áreas comunales de un complejo sometido al régimen de propiedad horizontal?

Compad sostiene que dichos términos comienzan a decursar desde la fecha en que la Administración de Reglamentos y Permisos (ARPE) expide el permiso de uso. No le asiste la razón.

Si como propone Compad, utilizamos la fecha de la expedición del permiso de uso como punto de partida para el referido cómputo, estaríamos acortando irrazonablemente el periodo que tiene todo titular en un

condominio para hacer sus reclamaciones por vicios de construcción. Esto último se desprende del hecho de que la fecha de la expedición del permiso de uso es requisito para proceder a la individualización del apartamento en un condominio, por lo cual, su expedición es necesariamente anterior a la fecha de la firma de la escritura de compraventa. Adoptar la teoría de Compad equivaldría a establecer que el momento en que comienza a decursar el término para incoar la reclamación es anterior a la fecha en la que el titular adquiere el apartamento.

Por su parte, la Asociación de Residentes de Pórticos de Guaynabo aduce que cuando la reclamación se refiere a defectos en los elementos comunes del inmueble, el punto de partida para computar los referidos términos es la fecha en que la Junta de Directores adquiere el control de la administración del condominio. Coincidimos con la posición de la Asociación de Residentes. Veamos por qué.

La Ley de Propiedad Horizontal, *supra*, le exige a quien somete la propiedad al Régimen de Propiedad Horizontal que administre interinamente y vele por el mejor funcionamiento y conservación de los elementos comunes. La razón de ello es la clara política pública de fomentar la estabilidad del régimen de propiedad horizontal y proteger a los adquirentes de las unidades sometidas a dicho Régimen.

De igual forma, el Reglamento de Condominios de DACO, dispone que entre las responsabilidades del administrador interino se encuentra la administración, vigilancia, conservación, cuidado, reparación y funcionamiento de las cosas y elementos de uso común y de los servicios generales. Sección 14 del Reglamento de Condominios de DACO, promulgado el 2 de abril de 1978.

Dicha administración interina está vigente desde el momento en que el inmueble se somete al régimen de propiedad horizontal hasta el momento en que se elige la primera Junta de Directores o el primer director. Sección 14 del Reglamento de Condominios, *supra*. Ello es así porque la Junta de Directores es el órgano ejecutivo que, a partir del cese de la administración interina, tiene la facultad y obligación de atender todo lo relacionado con el buen gobierno, administración, vigilancia y funcionamiento de los elementos comunes. Sec. 1293b.-4 de la Ley de Propiedad Horizontal, *supra*.

Aunque, de ordinario, los términos que nuestro ordenamiento reconoce para reclamar por defectos o vicios de construcción se computan a partir del otorgamiento de la escritura de compraventa, es evidente que no puede ser así en lo que concierne a reclamaciones por defectos en áreas comunales en edificios sometidos al régimen de propiedad horizontal.

Resolvemos, pues, que cuando se trata de unidades sometidas al régimen de propiedad horizontal, los

términos para reclamar por vicios de construcción en los elementos comunes se computan a partir del momento en que la Junta de Directores, tras su instalación, toma el control de la administración. Es en ese momento, cuando el desarrollador de un condominio cesa en sus funciones de administrador interino, que la Junta de Directores puede comenzar a ejercer, en representación de los titulares, los derechos y reclamaciones en cuanto a vicios y defectos de construcción.

Considerar una fecha anterior a aquélla en la que la Junta de Directores se constituya y tome el control de la administración, sería ilógico e injusto, pues se estaría pretendiendo que el desarrollador-administrador interino se reclame a sí mismo por vicios y defectos, ya que es él el administrador interino antes de la fecha en que se constituye la Junta de Directores.

El Art. 36a de la Ley de Propiedad Horizontal, 31 L.P.R.A. sec. 1293-1, establece en lo pertinente que en la reunión en que los titulares habrán de elegir las personas que ocuparán los cargos directivos, el titular o los titulares que hasta ese momento hayan estado a cargo de la administración (fungiendo como administrador/es interino/s) deberán entregar al Consejo de Titulares los libros de cuentas de la comunidad debidamente auditados y certificados por un contador público autorizado independiente, así como todos los fondos de la comunidad que tengan en su poder.

La recurrente Compad, S.E., como administrador interino, tenía la responsabilidad de ser diligente en la conservación y preservación de la propiedad, cuando aún no se había constituido la Junta de Directores. Sin embargo, a pesar de que los condóminos le reclamaron oportunamente por deficiencias específicas en áreas comunes en general y ésta afirmó que llevaría a cabo las reparaciones pertinentes, nada hizo al respecto.

Compad cesó de ejercer su administración interina el 10 de julio de 1999, fecha en que finalmente la Junta de Directores del Condominio Pórticos de Guaynabo pudo asumir el control de la administración del mismo.

Es pues, desde el momento en que la Junta de Directores adquiere el control de la administración del Condominio Pórticos de Guaynabo, el 10 de julio de 1999, que efectivamente estaba autorizada por ley a ejercer derechos y a instar reclamaciones en representación del Consejo de Titulares. La Junta de Directores presentó su reclamo ante el DACO el 2 de septiembre de 1999; esto es, poco más de dos (2) meses después de la fecha en que tomó el control sobre la administración del condominio.[5] Por todo lo anterior, conforme a los términos de notificación

---

[5] Debido a lo anterior, el Tribunal de Apelaciones actuó correctamente al disponer que debido a los hechos antes mencionados, no es preciso hacer "un desglose exhaustivo de los términos de notificación aplicables para cada uno de los defectos señalados por ser innecesario a los fines de la causa ante nuestra consideración". Nota al calce 3 a la página 11 de la Sentencia del Tribunal de Apelaciones de 16 de octubre de 2002.

establecidos por el referido Reglamento para cada uno de los defectos señalados, la Junta de Directores presentó su reclamación oportunamente.

### IV. Revisión de determinaciones de hechos de DACO

Finalmente, respecto a la contención de Compad a los efectos de cuestionar las determinaciones de hechos de DACO, vale decir que es norma de derecho claramente establecida que en el proceso de revisión de una decisión emitida por una agencia administrativa, los tribunales apelativos han de concederle gran peso y deferencia a la decisión administrativa en vista de la experiencia y conocimiento especializado de la agencia. Asociación Vecinos del Hospital San Jorge v. United Medical, 2000 T.S.P.R. 7 (2000); Agosto Serrano v. F.S.E., 132 D.P.R. 866, 879 (1993).

Debemos también tener presente que los procedimientos y decisiones de un organismo administrativo tienen a su favor una presunción de corrección y regularidad, la cual debe ser respetada mientras la parte que la impugne no produzca suficiente evidencia para derrotarla. Henríquez v. Consejo de Educación Superior, 120 D.P.R. 194 (1987); M. & B.S.,Inc. v. Departamento de Agricultura, 118 D.P.R. 319, 331 (1987). Además, debemos otorgarle deferencia a las determinaciones de los organismos si están sostenidas por evidencia sustancial que conste en el expediente administrativo. Rivera Concepción v. A.R.P.E., 2000

T.S.P.R. 143; P.R.T.C. v. Unión Independiente de Empleados Telefónicos, 131 D.P.R. 171 (1992).

En atención a los criterios y principios antes esbozados, la sección 4.5 de la Ley de Procedimiento Administrativo Uniforme, según enmendada, Ley Núm. 170 de 12 de agosto de 1988, 3 L.P.R.A. sec. 2175, al referirse al alcance de la función revisora, dispone, en lo pertinente, que las determinaciones de hechos de las decisiones de las agencias serán sostenidas por el tribunal, si se basan en evidencia sustancial que obra en el expediente administrativo. Asociación Vecinos del Hospital San Jorge v. United Medical, supra; P.R.T.C. v. J. Reg. Tel. de P.R., 2000 T.S.P.R. 83. Los tribunales, pues, en ausencia de una demostración de que las decisiones sean de naturaleza caprichosa, irrazonable o arbitraria, deberán abstenerse de intervenir con las determinaciones de las agencias administrativas. Id.

En el caso de marras, hemos examinado los documentos que obran en autos y concluimos que la determinación de DACO está sostenida por la evidencia sustancial que obra en el expediente administrativo.

Compad no ha ofrecido evidencia o alegación alguna que nos lleve a concluir que la determinación de DACO fuera irrazonable o que no estuviera fundamentada en la totalidad del récord. Considerando toda la evidencia documental que consta en el expediente, así como el informe de inspección ocular suscrito el 19 de octubre de

1999 por un técnico designado por DACO, el cual no fue objetado, y a falta de evidencia sustancialmente favorable a Compad, no vemos razón para sustituir nuestro criterio por el de la agencia administrativa.

A tenor con lo anterior, tampoco erró DACO al ordenar las reparaciones indicadas en su Resolución.

En mérito de lo cual, resolvemos que: (1) una junta de titulares de un complejo residencial sometido al régimen de propiedad horizontal ostenta capacidad jurídica para comparecer a vindicar sus derechos ante DACO y (2) en aquellos casos en que una junta de titulares presente una reclamación por deficiencias en la construcción, el plazo prescriptivo (según la naturaleza del vicio o la carestía que figure en la reclamación) se calculará a partir del momento en que la junta asuma el control de la administración en propiedad. En vista de ello, por los fundamentos antes esbozados, se confirma la sentencia dictada por el Tribunal de Apelaciones.

Se dictará sentencia de conformidad.

BALTASAR CORRADA DEL RÍO
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Asociación Residentes
Pórticos de Guaynabo

    Recurridos

            v.                    CC-2002-0871      Certiorari

Compad, S.E.;
F&S Construction, S.E.

    Peticionarios

SENTENCIA

San Juan, Puerto Rico, a 16 de diciembre de 2004.

    Por los fundamentos antes expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, resolvemos que: (1) una junta de titulares de un complejo residencial sometido al régimen de propiedad horizontal ostenta capacidad jurídica para comparecer a vindicar sus derechos ante DACO y (2) en aquellos casos en que una junta de titulares presente una reclamación por deficiencias en la construcción, el término prescriptivo aplicable (según la naturaleza del vicio o la carestía que figure en la reclamación) se calculará a partir del momento en que la junta asuma el control de la administración en propiedad. En vista de ello, se confirma la sentencia dictada por el Tribunal de Apelaciones.

    Lo pronunció, manda el Tribunal y certifica la Subsecretaria del Tribunal Supremo.


                        María I. Colón Falcón
                Subsecretaria del Tribunal Supremo