EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Luis A. Martínez Segarra y Blanca I. Rosa Hernández  Querellantes  v.  Juan M. Rosado Santoni  Recurrido  Javier A. Echevarría Vargas en su carácter de Secretario del Departamento de Asuntos del Consumidor  Agencia Peticionaria | Certiorari  2005 TSPR 127  165 DPR ____ |

Número del Caso: CC-2003-788

Fecha: 14 de septiembre de 2005

Tribunal de Circuito de Apelaciones:

>Circuito Regional IV de Aguadilla y Mayagüez

Juez Ponente:

>Hon. Roberto L. Córdova Arone

Abogado de la Parte Recurrida:

>Lcdo. Adalberto E. Moret Rivera

Abogado de la Parte Peticionaria:

>Lcdo. Luis Rafael Limeres Flores

Materia: Defectos de Construcción

Este documento constituye un documento oficial del Tribunal Supremo que está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis A. Martínez Segarra
y Blanca I. Rosa Hernández
    Querellantes

       v.

Juan M. Rosado Santoni          CC-2003-788     Certiorari
    Recurrido

Javier A. Echevarría Vargas
en su carácter de Secretario del
Departamento de Asuntos del
Consumidor
    Agencia Peticionaria


Opinión del Tribunal emitida por el Juez Presidente SEÑOR HERNÁNDEZ DENTON


San Juan, Puerto Rico, a 14 de septiembre de 2005.

El caso de autos requiere que determinemos si el Departamento de Asuntos del Consumidor (en adelante DACO) tiene jurisdicción para entender en una controversia entre un contratista de obra y la compañía suplidora de hormigón, dentro del procedimiento administrativo sobre incumplimiento de contrato iniciado por los dueños de la obra contra dicho contratista. Veamos.

I

El Sr. Luis Martínez Segarra y su esposa, la Sra. Blanca Rosa Hernández, suscribieron un contrato de construcción de obra con el contratista, Sr. Juan

Rosado Santoni. En el referido contrato, las partes estipularon que el señor Rosado Santoni construiría la fase inicial de una estructura que sería dedicada a vivienda, conforme a las especificaciones, tamaño y calidad identificadas en los planos preparados por el Ing. Rafael Torres García. Dicha obra incluiría, entre otras, la construcción de zapatas, muros y columnas en hormigón reforzado. Además, se estableció que el señor Rosado Santoni sería responsable de suministrar todos los materiales necesarios para la construcción. Se acordó, finalmente, que los esposos Martínez-Rosa pagarían una suma de veintinueve mil trescientos dólares ($29,300.00), los cuales serían desembolsados en tres plazos, según concluyeran las etapas de la construcción.

Así las cosas, el señor Rosado Santoni comenzó a construir la obra pactada. Posteriormente, con el propósito de inspeccionar la construcción en progreso y a instancias del ingeniero Torres García, el matrimonio Martínez-Rosa solicitó que se realizaran pruebas de compresión al hormigón utilizado en las zapatas, columnas y muros erigidos.[1] Los resultados de estas pruebas fueron insatisfactorios, pues no cumplieron con la resistencia mínima de 3,000 libras por pulgada cuadrada requeridas en los planos de construcción. En vista de ello, el ingeniero Torres García paralizó la edificación.

---

[1] Dichas pruebas fueron realizadas por las compañías independientes Western Soil, Inc. y Advanced Soil Engineering.

Los esposos Martínez-Rosa requirieron al señor Rosado Santoni, en varias ocasiones, que realizara sus propias pruebas de compresión y corrigiera la construcción para adaptarla a los planos aprobados. Sin embargo, éste negó su responsabilidad aduciendo que había cumplido con todas las cláusulas convenidas y que, de existir algún problema, era entre los esposos Martínez-Rosa y Macro Mix, Inc., compañía que suplió el hormigón a petición del señor Rosado Santoni. Luego de ello, este último abandonó la obra, llevándose consigo el equipo y las herramientas.

A raíz de estos hechos, los esposos Martínez-Rosa entablaron querella ante DACO contra el señor Rosado Santoni. Alegaron, en síntesis, incumplimiento contractual por parte de dicho contratista. Solicitaron que el señor Rosado Santoni corrigiera la obra y terminara la etapa contratada para que, concluida la misma satisfactoriamente, se procediera con el pago pactado. En la alternativa, de no acceder el señor Rosado Santoni a corregir y culminar la obra, reclamaron la devolución del dinero invertido.

Tras ciertos trámites procesales, DACO celebró una primera vista administrativa. El matrimonio Martínez-Rosa presentó evidencia para establecer que el hormigón utilizado no cumplía con la calidad especificada en los

planos.[2] Luego de ello, el señor Rosado Santoni solicitó la inclusión de Macro Mix, Inc. como parte de la querella. Fundamentó su petición en que fue ésta la compañía que él contrató para suplir el hormigón y era parte indispensable en los procedimientos. En vista de lo anterior, DACO señaló una segunda vista administrativa en la cual incluyó a Macro Mix, Inc.

Celebrada esta última vista, DACO emitió resolución en la que ordenó al señor Rosado Santoni rembolsar a los esposos Martínez-Rosa la cantidad de dieciocho mil trescientos dólares ($18,300.00). Además, declaró no ha lugar la solicitud del señor Rosado Santoni de incluir a Macro Mix, Inc. como parte de la querella. Razonó que los esposos Martínez-Rosa presentaron la querella por incumplimiento de contrato exclusivamente contra el señor Rosado Santoni. Añadió que la controversia que pudiera existir entre el señor Rosado Santoni y Macro Mix, Inc. sobre el material suplido era un pleito entre comerciantes en el que DACO carece de jurisdicción.

Insatisfecho, el señor Rosado Santoni solicitó al Tribunal de Apelaciones la revisión judicial del referido

_____

[2] Los esposos Martínez-Rosa presentaron en evidencia el informe y el testimonio del Dr. Eduardo Ramírez Santiago, perito en ingeniería estructural, quien concluyó que la calidad del hormigón utilizado no cumplía con las especificaciones de los planos de construcción ni con la reglamentación vigente aplicable a proyectos de vivienda familiar. El perito recomendó la demolición de los elementos estructurales afectados. Igualmente, presentaron el testimonio del ingeniero Torres García quien inspeccionó la construcción y declaró sobre el riesgo de colapso de la estructura debido a la resistencia inadecuada de sus cimientos.

dictamen. Dicho foro apelativo modificó la resolución recurrida a los efectos de ordenar a DACO celebrar una vista para determinar si Macro Mix, Inc. cumplió o no su obligación con el señor Rosado Santoni, y el daño ocasionado a éste, en caso de incumplimiento.

No conforme, DACO trae ante nos el presente recurso de *certiorari*. Aduce, en resumen, que carece de jurisdicción para entender en una controversia entre dos comerciantes. Por dicha razón, alega que erró el Tribunal de Apelaciones al ordenarle celebrar una vista para dilucidar y adjudicar la relación contractual entre un contratista y la compañía suplidora de hormigón. Vista la petición, acordamos expedir. Las partes han comparecido a exponer sus respectivas posiciones. Con el beneficio de ellas, resolvemos.

II

Al atender la controversia que nos ocupa, partimos de la norma firmemente establecida de que los tribunales apelativos deben conceder deferencia a las decisiones administrativas, en vista de la vasta experiencia y conocimiento especializado que poseen las agencias que las emiten. <u>Otero v. Toyota</u>, res. el 3 de febrero de 2005, 2005 TSPR 8; <u>Pacheco Torres v. Estancias de Yauco, S.E.</u>, res. el 30 de septiembre de 2003, 2003 TSPR 148. Es por ello que las determinaciones de hecho formuladas por una agencia serán sostenidas por los tribunales, siempre que exista en el expediente administrativo evidencia

sustancial que las apoye. Sec. 4.5 de la Ley de Procedimiento Administrativo Uniforme, 3 L.P.R.A. sec. 2175; Torres Acosta v. Junta Examinadora de Ingenieros, Arquitectos y Agrimensores, res. el 27 de abril de 2004, 2004 TSPR 65; Rebollo Vda. de Liceaga v. Yiyi Motors, res. el 13 de enero de 2004, 2004 TSPR 2.

Ahora bien, las conclusiones de derecho pueden ser revisadas por el tribunal en todos sus aspectos. *Id.*, Miranda v. Comisión Estatal de Elecciones, 141 D.P.R. 775 (1996). Desde luego, esto no significa que los tribunales, al ejercer su función revisora, puedan descartar libremente las conclusiones e interpretaciones de la agencia, sustituyendo el criterio de ésta por el propio. Otero v. Toyota, *supra*; P.R.T.C. v. J. Reg. Tel. de P.R., 151 D.P.R. 269 (2000). La doctrina sobre la revisión judicial reconoce, igualmente, que la interpretación de un estatuto por el organismo que lo administra y es responsable de su cumplimiento merece gran respeto y deferencia judicial. Oficina de la Procuradora del Paciente v. Aseguradora MCS, res. el 22 de septiembre de 2004, 2004 TSPR 153; Pacheco Torres v. Estancias de Yauco, S.E., *supra*; Asoc. Vec. H. San Jorge v. U. Med. Corp., 150 D.P.R. 70 (2000).

Anteriormente hemos resuelto que las conclusiones de derecho del organismo administrativo deberán ser sostenidas por los tribunales en la medida que éstas se ajusten al mandato de ley. P.R.T.C. v. J. Reg. Tel. de

P.R., *supra*. Incluso, en casos marginales o dudosos, la interpretación de un estatuto por la agencia encargada de velar por su cumplimiento merece deferencia sustancial, aun cuando dicha interpretación no sea la única razonable. *Id.*

Claro está, no cabe hablar de deferencia judicial cuando nos encontramos ante una interpretación estatutaria que afecta derechos fundamentales, resulta irrazonable o conduce a la comisión de injusticias. Costa, Piovanetti v. Caguas Expressway, 149 D.P.R. 881 (1999). Asimismo, "cuando la agencia interpreta el estatuto que viene llamado a poner en vigor de forma tal que produce resultados contrarios al propósito de la ley, dicha interpretación no puede prevalecer". Mun. de San Juan v. J.C.A., 149 D.P.R. 263, 280 (1999). *Véase, además,* Pacheco Torres v. Estancias de Yauco, S.E., *supra*; Costa, Piovanetti v. Caguas Expressway, *supra*.

Tomando en consideración la normativa expuesta, evaluemos el propósito que inspiró la creación del Departamento de Asuntos del Consumidor y su jurisprudencia interpretativa.

III

A

Mediante la Ley Núm. 5 de 23 de abril 1973, (en adelante Ley Núm. 5) la Asamblea Legislativa creó el Departamento de Asuntos del Consumidor con el propósito primordial de vindicar e implementar los derechos del

consumidor. 3 L.P.R.A. secs. 341 *et seq.* Aun cuando existía en aquel entonces legislación protectora de este sector de la población, el legislador entendió necesaria la creación de este organismo administrativo, a nivel de gabinete, con el objetivo de garantizarle al consumidor la debida atención a sus problemas. Exposición de Motivos de la Ley Núm. 5, Leyes de Puerto Rico, 1973, pág. 17; Quiñones v. San Rafael Estates, S.E., 143 D.P.R. 756 (1997).

Según surge de su Exposición de Motivos, la aprobación de la Ley Núm. 5 respondió principalmente a lo siguiente:

> La complejidad del mercado de bienes y servicios, unido al sinnúmero de prácticas indeseables que algunos **comerciantes y manufactureros** llevan a cabo, requieren la creación de un organismo efectivo capaz de sacar **al consumidor del estado de indefensión y desvalimiento en el cual se encuentra.** Este organismo deberá ventilar y adjudicar **las querellas traídas por los consumidores,** fiscalizar el cumplimiento de las leyes cuyo objetivo es proteger al consumidor, educar al consumidor y ponerle al consumidor representación adecuada en la defensa de todos sus derechos. (Énfasis nuestro). *Id.*

En vista de ello, se creó a DACO como una agencia especializada, con personal profesional y técnico altamente competente, para poder vindicar los derechos del consumidor de forma agresiva y firme. *Id.* Se le confirió, a través de su Secretario, la facultad para "atender, investigar y resolver las quejas y querellas presentadas por los consumidores de bienes y servicios adquiridos o recibidos del sector privado de la

economía". 3 L.P.R.A. sec. 341e(c). Además, se le impuso el deber de implementar una estructura de adjudicación administrativa mediante la cual se consideraran las querellas de los consumidores y se concedieran los remedios pertinentes conforme a derecho. 3 L.P.R.A. sec. 341e(d). En fin, se adoptó todo un esquema administrativo dirigido a minimizar los efectos de la desigualdad económica y de conocimiento técnico entre los proveedores de bienes y servicios y el consumidor.

Cabe señalar que la intención legislativa y la política pública de proteger y vindicar los derechos del consumidor no surgió con la creación de DACO. Éstas ya se habían manifestado al establecerse en 1968 su antecesora, la Administración de Servicios al Consumidor, entidad administrativa que poseía funciones, poderes y deberes sustancialmente similares a los de DACO. *Véase*, Hernández Denton v. Quiñones Desdier, 102 D.P.R. 218 (1974). Al momento de instituir la referida agencia, la Asamblea Legislativa reconoció el problema que, aun en aquella época, afrontaba el consumidor, y lo relató de la siguiente manera:

> Si bien varios organismos gubernamentales tienen jurisdicción sobre asuntos que afectan sus intereses, el consumidor no cuenta con un organismo efectivo, público o privado, **que vele única y exclusivamente por sus intereses peculiares como grupo**, contrario a la [sic] que sucede con los trabajadores, **comerciantes**, industriales, agricultores y otros. Ello contribuye a que en ocasiones se ignoren los problemas especiales que afectan en un momento dado al grupo consumidor y a que sus puntos de vista pasen frecuentemente inadvertidos.

(Énfasis nuestro). Exposición de Motivos, Ley Núm. 148 de 27 de junio de 1968, Leyes de Puerto Rico, 1968, pág. 460.

Aun cuando la Administración de Servicios al Consumidor quedó suprimida por la aprobación de la Ley Núm. 5, *supra*, no cabe duda que el propósito legislativo que inspiró su creación fue preservado y transferido a DACO, quien retuvo todas las funciones, poderes y deberes de aquélla, por mandato expreso de ley. *Véase* 3 L.P.R.A. sec. 341d(a)(1).

B

Resulta, pues, meridianamente claro que "[e]l espíritu que informó la creación de DACO y la aprobación de su ley orgánica fue precisamente facilitar al consumidor la vindicación de sus intereses con un vehículo procesal ágil y eficiente, más costo-efectivo y que equiparara el poder de los consumidores con el de los proveedores de bienes y servicios". Asociación Residentes Pórticos de Guaynabo v. Compaq, S.E., res. el 16 de diciembre de 2004, 2004 TSPR 203. Igualmente, se persigue dicho propósito mediante la simplificación de los procedimientos adjudicativos disponibles al consumidor y evitando los remedios tardíos. Rodríguez v. Tribunal Superior, 104 D.P.R. 335 (1975). Por consiguiente, su sistema administrativo tiene que estar dotado de una flexibilidad mayor que la del trámite judicial ordinario, de manera que se propicie su uso eficiente por parte de personas legas. Srio. DACO v. J. Condóminos C. Martí, 121

D.P.R. 807 (1988). De otra forma, "[l]os remedios tardíos y los procedimientos complicados derrotarían todo el propósito de las leyes y de las oficinas creadas para la defensa del consumidor". Pérez Ríos v. Hull Dobbs, 107 D.P.R. 834, 840-841 (1978).

En atención a ello, hemos resuelto que "[l]a inclusión de un tercero en el proceso administrativo [ante DACO] sin que el querellante o la agencia lo estime necesario o conveniente, complica y retarda innecesariamente el procedimiento," en contravención a la filosofía que informa dicho trámite administrativo. *Id.* Sencillamente, resulta pernicioso para el consumidor querellante tener que aguardar por su remedio mientras la agencia dilucida la responsabilidad de otras personas que pueden ventilar sus reclamos, si lo desean, mediante litigación ordinaria. *Id.* Nótese, además, que el procedimiento adjudicativo ante DACO debe culminar dentro del plazo de ciento veinte (120) días laborables desde la presentación de la querella, teniendo el consumidor que acudir al tribunal para buscar un remedio en caso de dilación injustificada por parte de la referida agencia. 3 L.P.R.A. sec. 341i-1 y 341i-2. Es decir, el objetivo que persigue el esquema administrado por DACO tiene como corolario necesario la pronta tramitación de la querella del consumidor; claro ésta, sin dejar de brindarles a los querellados todas las garantías del debido proceso de ley. Rodríguez v. Tribunal Superior, *supra*.

En conclusión, DACO fue creado como un foro especializado para dilucidar y adjudicar los derechos del consumidor de manera ágil, sencilla y económica. Ahora bien, la Ley Núm. 5, *supra*, no define quién constituye un consumidor para efectos de la protección provista por dicha legislación. Sin embargo, según surge del Reglamento de Procedimientos Adjudicativos de DACO, el término consumidor incluye a "[t]oda persona natural, **que adquiere o utiliza productos o servicios como destinatario final**. Incluye toda otra persona, asociación o entidad que por designación de ley está facultado para presentar su reclamación en el Departamento" (énfasis nuestro).[3] Regla 4(d) del Reglamento Núm. 6219, vigente desde el 18 de noviembre de 2000. Por sus propios términos, esta definición excluye a cualquier persona o entidad que adquiere bienes o servicios con motivo de lucrarse en una posterior reventa. Principio análogo revisten otras legislaciones protectoras del consumidor que son administradas por DACO, en las cuales se

---

[3] Es menester señalar que la referida interpretación que DACO hace de su ley habilitadora fue promulgada como una regla legislativa, conforme a la autoridad conferida por la Asamblea Legislativa --3 L.P.R.A. secs. 341(e)(g) y 341(g)-- y, además, está acorde con el propósito legislativo de proteger al consumidor desvalido e indefenso, y no al comerciante. Habida cuenta de que estamos ante una regla legislativa válidamente promulgada por la agencia, ésta tiene el mismo efecto vinculante que una ley. Asociación de Maestros de P.R. v. Comisión de Relaciones del Trabajo del Servicio Público, res. el 31 de marzo de 2003, 2003 TSPR 47. Véase, además, Richard J. Pierce, *Administrative Law Treatise*, 4ta ed., Aspen Law & Business, sec. 6.4, págs. 324-332.

especifica que el sujeto amparado por el estatuto es el destinatario final del producto o servicio.[4]

Como resultado de lo anterior, una persona o entidad que no pueda ser catalogada como un consumidor, dentro de los hechos particulares del caso y según el estado de derecho vigente, no podría presentar una querella ante DACO, pues ésta carecería de jurisdicción para dilucidar la misma. *Véase* P.R. Amer. Ins. Co. v. P.R. Park. System, 108 D.P.R. 106 (1978). Conforme hemos expresado:

> Una agencia administrativa no puede asumir jurisdicción sobre situación alguna que no esté autorizada por ley; es decir, ni la necesidad, ni la utilidad, ni la conveniencia pueden sustituir al estatuto en cuanto a fuente de poder de una agencia administrativa. (Énfasis omitido). Raimundi Meléndez v. Productora de Agregados Inc., res. el 21 de junio de 2004, 2004 TSPR 106.

Vista esta exposición de derecho, veamos los hechos particulares de este caso.

IV

Los esposos Martínez-Rosa presentaron una querella ante DACO alegando que el Sr. Rosado Santoni no había cumplido con el contrato de obra suscrito por las partes. A tenor con el mismo, el contratista Rosado Santoni se obligó a levantar una estructura que sería dedicada a vivienda y a suministrar los materiales necesarios para

---

[4] Véanse, por ejemplo, Art. 2 de la Ley de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2052(i); Art. 2 de la Ley Complementaria de Garantías de Vehículos de Motor, 10 L.P.R.A. sec. 2067(g); Art. 2 de la Ley de Rotulación de Productos Textiles de Puerto Rico, 10 L.P.R.A. sec. 2152(l); y el Art. 3 de la Ley para la Prevención del Fraude en el Telemercadeo, 10 L.P.R.A. sec. 4031(1).

la construcción. Dicha edificación, además, debía obedecer a las especificaciones, tamaño y calidad establecidas en los planos de construcción aprobados.

Para dilucidar la controversia, DACO celebró dos vistas en las cuales se presentó prueba documental y testifical. Según la prueba pericial presentada por el matrimonio Martínez-Rosa, la cual no fue controvertida, las zapatas de la estructura erigida por el Sr. Rosado Santoni no soportaban 3,000 mil libras de presión por pulgada cuadrada, conforme lo requería los planos de construcción aprobados, razón por la cual los elementos estructurales debían ser demolidos para ser construidos nuevamente. El Sr. Rosado Santoni, por su parte, se limitó a alegar que de haber algún defecto, éste se debió al hormigón utilizado, por lo que era Macro Mix, Inc. la responsable. El matrimonio Martínez-Rosa se opuso aduciendo que la persona responsable ante ellos era el contratista y que la inclusión de Macro Mix, Inc. sólo retrasaría los procedimientos innecesariamente. En vista de lo anterior, el foro administrativo determinó que el Sr. Rosado Santoni no satisfizo la obligación pactada, toda vez que la construcción por él hecha no cumplió con los parámetros exigidos en los planos de construcción aprobados. Dicha conclusión fue sostenida por el Tribunal de Apelaciones. Declinamos intervenir con la misma.

El contratista de una obra viene obligado a ejecutarla conforme a lo convenido en el contrato, y en

atención a las reglas del arte de la construcción y a los usos o reglas profesionales. M. A. Del Arco y M. Pons, *Derecho de la Construcción*, Ed. Hesperia, 1980, pág. 40. Si lo ejecutado resulta de calidad inferior o presenta defectos, es indudable que el contratista no ha cumplido su obligación. *Id.* Ello descansa en el principio de que el contratista no solamente se obliga a realizar la obra, **sino también a realizarla bien**. Constructora Bauzá, Inc. v. García López, 129 D.P.R. 579 (1991). La utilización de materiales inadecuados o defectuosos, así como la ejecución defectuosa de los trabajos de construcción constituyen vicios de la construcción de los cuales debe responder el contratista ante el dueño de la obra. M. Albaladejo, *Comentarios al Código Civil y Compilaciones Forales*, Madrid, Ed. Revista de Derecho Privado, 1986, T. XX, Vol. 2, pág. 298-299; J.M. Manresa y Navarro, *Comentarios al Código Civil Español*, 6ta ed. rev., Madrid, Ed. Reus, 1969, T. X, Vol. II, pág. 710.

Ahora bien, la divergencia de criterios entre DACO y el Tribunal de Apelaciones se manifestó en cuanto a la necesidad de incluir a Macro Mix, Inc. como parte de la querella. Según DACO, una vez determinado que el contratista Rosado Santoni incumplió su obligación de construir la obra pactada, y por tanto, le responde al matrimonio Martínez-Rosa, culminó el trámite administrativo ante dicha agencia sin necesidad de dilucidar una controversia entre comerciantes sobre la

cual carece de jurisdicción. Sin embargo, el Tribunal de Apelaciones entendió que DACO tenía que celebrar una vista para resolver si Macro Mix, Inc. fue negligente en el cumplimiento de su obligación con el Sr. Rosado Santoni y cuánto debe compensarle a este último, en caso de contestar dicha interrogante en la afirmativa. Según expuso el tribunal apelativo en reconsideración, el Sr. Rosado Santoni es un consumidor en relación con Macro Mix, Inc. Incidió el foro apelativo intermedio en su razonamiento. Nos explicamos.

El matrimonio Martínez-Rosa inició este procedimiento adjudicativo contra el Sr. Rosado Santoni por incumplimiento contractual. En ese sentido, estamos ante una querella presentada por un consumidor afectado por el servicio provisto por un contratista. Sin lugar a dudas, DACO tenía jurisdicción para dilucidar esta controversia, pues fue esa la intención del legislador al crear el mencionado foro administrativo. Sin embargo, no podemos llegar a igual conclusión con relación a la posible reclamación que pueda tener el Sr. Rosado Santoni contra Macro Mix, Inc. Resulta que, contrario a lo resuelto por el Tribunal de Apelaciones, un contratista no es un consumidor que pueda aprovechar el esquema administrativo de DACO para vindicar sus derechos frente a terceros. Es decir, se trata de una controversia que no afecta consumidor alguno, en vista de que al verdadero consumidor en este caso, el matrimonio Martínez-Rosa, se

le proveyó el remedio solicitado sin necesidad de entrar a considerar esta disputa.

El contratista no es la persona que adquiere bienes o servicios como destinatario final, sino que los utiliza para producir un resultado con ánimo de lucro, toda vez que cobra por éste al destinatario final del producto, el dueño de la obra. Tampoco se trata del consumidor inexperto, desvalido e indefenso al cual respondió la creación de DACO. Todo lo contrario. El contratista debe conocer el arte de su oficio y dominar con destreza las prácticas de la construcción y la utilización de los materiales. En fin, no estamos ante el sujeto protegido por la Ley Núm. 5, *supra*, y demás legislación administrada por DACO.[5] Si aváláramos la interpretación del Tribunal de Apelaciones, sería inimaginable el alcance de la jurisdicción de DACO, pues prácticamente todos los comerciantes y manufactureros podrían ser catalogados como consumidores en relación con sus respectivos suplidores. Nada más lejos del propósito legislativo que inspiró la creación de DACO.

A tenor con lo expresado, una vez DACO adjudicó los planteamientos presentados por el consumidor --en este caso, el matrimonio Martínez-Rosa-- no podía sujetarlo indefinidamente a un trámite administrativo para

---

[5] De hecho, el contratista está sujeto a diversa reglamentación promulgada por DACO en defensa, precisamente, del consumidor de sus servicios. *Véase*, por ejemplo, el Reglamento Para Registro de Contratistas, Reglamento Núm. 5496, de 22 de octubre de 1996.

dilucidar una controversia sobre la cual carece de jurisdicción. Lo contrario resultaría en el desvío de los recursos y esfuerzos que la Asamblea Legislativa reservó para proteger a los consumidores e implicaría la asunción de jurisdicción sobre una situación que no está contemplada en la Ley Núm. 5, *supra*, ni en su historial legislativo. El Sr. Rosado Santoni, de entenderlo necesario, puede presentar ante los tribunales cualquier reclamación que pueda tener contra Macro Mix, Inc.

V

Por los fundamentos que anteceden, se revoca la sentencia emitida por el Tribunal de Apelaciones y, por consiguiente, se confirma la resolución emitida por el Departamento de Asuntos del Consumidor.

Se dictará Sentencia de conformidad.


FEDERICO HERNÁNDEZ DENTON
Juez Presidente

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Luis A. Martínez Segarra
y Blanca I. Rosa Hernández
    Querellantes

      v.

Juan M. Rosado Santoni            CC-2003-788       Certiorari
    Recurrido

Javier A. Echevarría Vargas
en su carácter de Secretario del
Departamento de Asuntos del
Consumidor
    Agencia Peticionaria

SENTENCIA

San Juan, Puerto Rico, a 14 de septiembre de 2005.

Por los fundamentos expuestos en la Opinión que antecede, la cual se hace formar parte íntegra de la presente, se revoca la sentencia emitida por el Tribunal de Apelaciones y, por consiguiente, se confirma la resolución emitida por el Departamento de Asuntos del Consumidor.

Así lo pronunció, manda el Tribunal y certifica la Secretaria del Tribunal Supremo. La Juez Asociada señora Fiol Matta inhibida.

Aida Ileana Oquendo Graulau
Secretaria del Tribunal Supremo